## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JOSEPH CASTILLO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No.  5:22-CV-00777  JKP** |
| | § | |
| **CHO OK SANG,** | § | |
| | § | |
| **Defendant.** | § | |

## DEFENDANT'S MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Now comes Defendant Ok Sang Cho, and files this Motion to Dismiss under FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) and 12(b)(6). This suit is but the latest in a long and recent series of dubious petitions filed by this attorney, many of them *in forma pauperis* like this one, alleging technical violations of the AMERICANS WITH DISABILITIES ACT. Far from presenting any true claims of discrimination, these cookie-cutter, drive by lawsuits have followed a familiar pattern of demanding unconscionable sums from small businesses.[1]

As this Court and the Fifth Circuit is well aware, this reprehensible entrepreneurial litigation fails for lack of standing.

---

[1] Attached as Exhibit A are true and correct copies of the virtually identical $15,500 pre suit demands in these cookie cutter, drive by lawsuits.

Defendant shows as follows:

I.    HISTORY OF THESE SUITS AND THE RULE 11(a) ISSUE

Beginning in February of this year, Plaintiff's counsel began filing virtually identical vexatious lawsuits alleging technical violations of the AMERICANS WITH DISABILITIES ACT citing to certain recommendations set forth in the *Americans with Disabilities Act Accessibility Guidelines*. Each of these lawsuits focuses on allegations of non-compliance with signage, parking lots, and paths of travel, such as marked accessible parking, parking signage, and curb cuts. There are no complaints regarding any interior features of the small businesses sued. Each of the allegations are of the sort one could attempt to raise by examining Google Maps or other similar databases with include street level imagery. To date, this Plaintiff has filed at least 16 and Plaintiff's counsel has filed at least 33 of these cookie-cutter cases in the Western District of Texas.[2] Additional suits have been filed by plaintiff's attorney in the Northern District of Texas, but strangely none in the Southern District of Texas where plaintiff's counsel has his practice representing property owners.

These cases follow a now familiar pattern. A demand letter is sent to a small business unrepresented by counsel, outlining purported violations, and demanding

---

[2] Similarly, attorneys Matthew Sapp and K. Michael Sturgill have filed at least 41 virtually identical lawsuits in the Western District of Texas against different small business defendants, utilizing the same cast of supposed plaintiffs. Many of these suits also have been filed *in forma pauperis*, which means that taxpayers are footing the bill for their abusive litigation scheme for which they hope to garner attorneys' fees.

unconscionable sums of money. Even when the small business attempts contact regarding the demand letter, plaintiff's counsel is unresponsive, or the business learns that suit has been filed.

Probably because his actions would tend to horrify and alienate him from the property owners he has made a business of representing, plaintiff's counsel files these suits, using mail drop address in San Antonio, and not his firm address in Houston. *See and compare* https://texaslandlordattorney.com/. Interestingly, the location of plaintiff attorney's San Antonio mail box drop exhibits each of the technical deficiencies to accessibility outlined in his cookie-cutter complaints, such as no designated accessible parking and no curb cuts. RULE 11(a) of the FEDERAL RULES OF CIVIL PROCEDURE requires that an attorney signing a motion or pleading provide that attorney's address. In this case, and in all of plaintiff's counsel's AMERICANS WITH DISABILITIES ACT lawsuits, plaintiff's counsel merely lists his inaccessible mail box drop location and not his actual address.

Common to each of the suits about which the undersigned has investigated is the defendant's utter lack of knowledge as to ever encountering any of the cast of characters employed as parties plaintiff. Although the undersigned has not contacted all of the defendants in these 60 plus cookie-cutter lawsuits, the undersigned has never encountered a defendant in any of these suits who recalls any personal contact with the various plaintiffs employed as "testers" in these cases.

## II.    INTRODUCTION CONCERNING THIS PARTICULAR CASE

In his Amended complaint, Joseph Castillo has deleted the specific reference to being a self styled "tester." Although he has deleted the word "tester," Mr. Castillo's purpose remains unchanged. He claims his purpose "is to be a regular patron (i.e. purchase gasoline, use the bathroom, purchase convenience items, and also purchase general goods and services of the type that would be purchased by any other person in their daily life), and to determine if and when the Subject Property is made accessible." Plaintiff's First Amended Complaint at ¶ 15. Although he doesn't use the word, Mr. Castillo is still fails to in any way demonstrate an injury in fact sufficient to accord jurisdiction. *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 273 (5th Cir. 2021). Accord *Laufer v. Looper*, 22 F.4th 871, 877-78 (10th Cir. 2022); *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022). Mr. Castillo does not have standing to sue because his generalized interest in "becoming a patron" is not the kind of personal interest that gives rise to Article III standing.

For a plaintiff to have Article III standing, he must establish three things: (1) that he has an injury in fact; (2) that there is a causal connection between his injury and the conduct complained of; and (3) that his injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An injury in fact must be "particularized," and must be "concrete." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). "Particularized" injuries "affect the plaintiff in a personal and

individual way." *Id.* (internal quotation marks omitted). Concrete injuries are "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. ___, ___, 141 S.Ct. 2190, 2206, 210 L. Ed. 2d 568 (2021); see also *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63-64 (2d Cir. 2021). "An uninjured plaintiff who sues seeking to ensure a defendant's "compliance with regulatory law" (and, of course, to obtain some money via the statutory damages)" lacks Article III standing. *TransUnion LLC*, 594 U.S. at ___,141 S. Ct. at 2206.

Plaintiff's pleading in this case is a collection of bare boilerplate assertions that Defendant has failed to comply with certain recommendations set forth in the *Americans with Disabilities Act Accessibility Guidelines*.[3] At no point, is there any attempt to explain how any of the asserted technical violations prevented Plaintiff's use of the public accommodation. In that Mr. Castillo's boilerplate pleading fails to address how any of the alleged technical violations resulted in a concrete personal harm. He does not even identify what public accommodation he claims he was prevented from accessing. Mr. Castillo continues to lack Article III standing.

Moreover, even if Mr. Castillo alleged a statutory violation of the ADA, as opposed to non-compliance with certain accessibility guidelines, he would still lack

---

[3] Of course, the Fifth Circuit has held that minor deviations from the ADAAG technical guidelines standing alone do not give rise to a cause of action under the ADA. See *Greer v. Richardson Indep. Sch. Dist.*, 472 F. App'x 287, 295 (5th Cir. 2012). While ADAAG technical requirements may be a helpful reference point in evaluating barriers to access, a court cannot determine that such gives rise to a violation of the ADA.

Article III standing. If the ADA labeled all violations of that act and its implementing regulations as discrimination — which it does not, see 42 U.S.C. §§ 12112, 12132, 12182 (defining disability discrimination under the ADA) — *TransUnion* makes clear that a statutory violation, however labeled by Congress, is not sufficient for Article III standing. *TransUnion*, 594 U.S. at ___, 141 S. Ct. at 2205.

Allegations of improper signage or a non compliant ramp, for example, which do not comport with the guidelines, as provided and without more, are insufficient to survive a motion to dismiss. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

## III.   STANDARD FOR DETERMINING A MOTION TO DISMISS

When the issue is subject matter jurisdiction, as it is in this case, "[t]he burden of proof for a RULE 12(b)(1) motion to dismiss is on the party asserting jurisdiction," and "[a]t the pleading stage, the 'burden is to allege a plausible set of facts establishing jurisdiction.'" *Laufer*, 996 F.3d at 271-72, quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) and *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

Because standing is fundamental to subject matter jurisdiction under Article III of the Constitution this plausible set of facts must include an allegation the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338.

Pleading an "injury in fact" requires that the plaintiff "show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. Even when the injury is defined by statute, "the deprivation of a right created by statute must be accompanied by 'some concrete interest that is affected by the deprivation.'" *Laufer*, 996 F.3d at 272, quoting *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016).

The Fifth Circuit has repeatedly held that this requires that ADA plaintiffs allege "in detail" how the supposed ADA violation will "negatively affect their day-to-day lives." See *Deutsch v. Annis Enterprises, Inc.*, 882 F.3d 169, 174 (5th Cir. 2018); *Frame v. City of Arlington*, 657 F.3d 215, 235-36 (5th Cir. 2011) (en banc); *Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F. App'x 336, 341 (5th Cir. 2018).

For claims brought under the ADA, proving a past injury is not enough. Because Title III of the ADA provides only for injunctive relief the plaintiff must also plead a plausible intent to return to the defendant property. *Deutsch*, 882 F.3d at 173.

Without the imminent danger of future injury, the plaintiff does not have standing to seek injunctive relief and the claim must fail. "[P]laintiffs seeking injunctive and declaratory relief can satisfy the redressability requirement [of Article III] only by demonstrating a continuing injury or threatened future injury." *Id*. See also *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). The threatened injury must

also be an injury in fact, and there must be a "substantial risk" the injury will occur. *Crawford v. Hinds County Bd. of Supervisors*, 1 F.4th 371, 375 (5th Cir. 2021).

An allegation of a past wrong is not sufficient to allege an imminent future wrong. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983). Because an injury in fact must be "concrete," this requires a substantial risk that the plaintiff will in the future suffer the same kind of harm that satisfies the Article III injury requirement for past injury.

## IV.   MR. CASTILLO DOES NOT HAVE STANDING

There is no Article III standing for an individual who merely alleges technical violations of AMERICANS WITH DISABILITIES ACT. *Laufer*, 996 F.3d at 271-72; *Laufer*, 22 F.4th 877-78; *Harty*, 28 F.4th at 444. Mr. Castillo alleges the same kind of interest as has been rejected in this circuit and in others. As a would be "patron" Mr. Castillo has not shown any injury in fact related to any alleged technical violation required by Article III.

It is impossible to believe that of the over 60 cookie-cutter lawsuits filed by these three attorneys, each alleging virtually the same non-compliance with ADAAG parking lot accessibility guidelines, that Mr. Castillo has a particularized interest in this Thai restaurant.[4]

---

[4] If a plaintiff's litigation history may undercut the attempt to prove a particularized interest by showing an intent to return, *Hunter v. Branch Banking and Tr. Co.*, 2013 WL 4052411, at *5 (N.D. Tex. Aug. 12, 2013), citing *Norkunas v. Wynn Resorts Holdings*, LLC, 2007 WL 2949569, at * 4 (D.Nev. Oct.10, 2007) (stating that "**a plaintiffs litigation history can undercut the sincerity of his or her**

It is equally clear that Mr. Castillo has no particularized interest any of the other sixteen locations for which he has filed virtually identical complaints alleging the same non-compliance with ADAAG parking lot accessibility guidelines. See *Joseph Castillo v. Safaiz International Inc.*, 5:22-cv-00174-FB; *Joseph Castillo v. JTPG Properties LLC*, 5:22-cv-00184-JKP; *Castillo v. Bardoi Twins Ventures LLC*, 5:22-cv-00241-XR; *Castillo v. Sanchez et al*, 5:22-cv-00301-FB; *Castillo v. Hank Sully LLC*, 5:22-cv-00472-XR; *Castillo v. A-Max Insurance Services, Inc.*; 5:22-cv-00509-XR; *Joseph Castillo v. Wanda F. Camp*; 5:22-cv-00594-XR; *Castillo v. Gaumnitz Inc.*, 5:22-cv-00595-XR; *Castillo v. VV Commercial LLC*; 5:22-cv-00612-RBF; *Joseph Castillo v. JTPG Properties LLC*, 5:22-cv-00184-JKP; *Castillo v. Sanchez et al*, 5:22-cv-00301-FB; *Castillo v. Hank Sully LLC*, 5:22-cv-00472-XR; *Castillo v. CMHH Investments LLC*, 5:22-cv-00616-JKP; *Castillo v. Twiga Investments LP*, 5:22-cv-00617-FB; *Castillo v. Lapeau, L.P.*, 5:22-cv-00735-JKP; *Castillo v. Bandera Bliss, LLC*, 5:22-cv-00770-HJB; *Castillo v. Leccino, LLC*, 5:22-cv-00771-OLG; *Castillo v. Mowood, L.P.*, 5:22-cv-00772-XR.

These virtually identical boilerplate lawsuits filed against businesses in Bexar County, belie any plausible intent to "be a patron." Apart from this boilerplate found in 60 other lawsuits filed by the same three attorneys, Mr. Castillo has articulated no personal interest in the various public accommodations. Moreover, Mr. Castillo's original complaint admits he was there to look for ADA violations so he could file a

---

expressed intent to return"); *Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1374-75 (M.D.Fla.2004) (similar), then **identical statements appearing in more than 60 cookie-cutter lawsuits brought by the same three attorneys should undercut the sincerity of an expressed intent to return**.

lawsuit. Plaintiff's Complaint at ¶ 7. Mr. Castillo now expects this Court to blithely accept that he wants to be a "patron." The requirements of Article III standing are more rigorous than this attempt at a transformation on paper. At best, Mr. Castillo's interest remains the abstract enforcement of the ADA and does not satisfy the requirements of Article III. It is more likely given the outrageous pre suit demands that this is just an attempted money grab.

It is true that Mr. Castillo, as is true in each of the cookie-cutter lawsuits, alleges that he visited or attempted to patronize the property at issue. Plaintiff's First Amended Complaint at ¶ 15. This conclusory allegation, especially as it appears in each of these cookie-cutter lawsuits, fails to meet the requirement that an allegation be "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's complaint lacks sufficient specificity "to raise a right to relief above the speculative level." *Id*. at 555. Mr. Castillo alleges that he lives "within 30 miles" of the Property and is near the Property "numerous times every month." Plaintiff's First Amended Complaint at ¶ 10. The same allegation is made in each of the cookie-cutter lawsuits. This hardly alleges a plausible intent to be a "patron" of all of these businesses in Bexar County.

Indicative of Plaintiff's failure to allege a particularized injury is the statement he intends to revisit "to be a regular patron (i.e. use the bathroom, purchase food items, dine at a restaurant, and purchase general goods and services of the type that would be purchased by any other person in their daily life), and to determine if and when the

Subject Property is made accessible." Plaintiff's First Amended Complaint at ¶ 15. By such statement Plaintiff still believes his purpose is to be a "tester" by a different name a status which does not give rise to Article III jurisdiction. *Id.*

Plaintiff's Complaint is nothing more than a series of legalistic assertions designed to further this entrepreneurial litigation. Allegations of this kind that merely quote statutes are conclusory, not factual, and cannot satisfy *Twombly* and its progeny. As the Supreme Court observed in *Ashcroft*, "[a] pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678. Mr. Castillo has not provided any facts that would make his claim to be "a patron" of Property plausible, especially given sixteen virtually identical lawsuits, and has therefore failed to allege that he had the kind of personal interest in this particular business necessary to assert an Article III injury.

Finally, and perhaps most importantly, indicative of the lack of personal interest by Mr. Castillo is the statement that "[t]he discriminatory violations described above are not an exhaustive of the Defendant's current barriers to equal access and violations of the ADA." Plaintiff's First Amended Complaint at ¶ 32. Plaintiff announces an intention to conduct "an on site inspection by Plaintiff's representatives pursuant to Federal Rule of Civil Procedure 34." *Id.* Plaintiff has the burden at the outset of the litigation to establish standing through an injury in fact. Mr. Castillo cannot be allowed to proceed in the hopes that some expert will point out some hypothetical future barrier to accessibility that Mr. Castillo has never encountered and does not know exists.

V.   MR. CASTILLO HAS NOT ALLEGED A PLAUSIBLE INJURY

Even if Mr. Castillo had plausibly alleged an interest in the Property other than his and his attorney's interest in filing lawsuits for personal gain, his Complaint would still fail because it does not allege how any of the alleged failure to comply with the accessibility guidelines prevented his patronage of the Property. To state a claim under Title III the plaintiff must not only allege the existence of an architectural barrier, he must also plausibly allege how that barrier affected him personally. *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000). See also *Mosley v. QuikTrip Corp.*, No. CV-20-01937-PHX-ROS, 2021 U.S. Dist. LEXIS 226239, 2021 WL 5493444 (D. Ariz. Nov. 23, 2021).

Like all the boilerplate complaints, Mr. Castillo complains of alleged signage and wheelchair ramp technical violations of the accessibility guidelines. Yet, Mr. Castillo can provide no explanation as to how any of these supposed violations acted to prevent him personally from access to the Property by these alleged minor technical defects. Without such, his complaint must be dismissed.

A plaintiff must show imminent future injury that will be avoided in order to state a claim for relief under Title III of the ADA. This requires both that the anticipated injury be an injury in fact and that it be imminent:

> That threatened future injury "must be an injury in fact." ... That means, as relevant here, that the injury must be "'imminent' ... 'to ensure that the alleged injury is not too speculative for Article III purposes.'" ... "For

a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur."

*Crawford*, 1 F.4th at 375. In an ADA case this requires a plausible intention or desire to return:

> Plaintiffs who encounter barriers at public accommodations have standing to bring injunctive claims only if they show a plausible intention or desire to return to the place but for the barriers to access. *Deutsch v. Travis Cty. Shoe Hosp., Inc.*, 721 F.App'x 336, 339-40 (5th Cir. 2018); see also *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shatz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). A vague allegation of an intent to return to the place of injury "some day" is insufficient.

*Strojnik v. Landry's Inc.*, NO. 4:19-CV-01170, 2019 WL 7461681, 2019 U.S. Dist. LEXIS 223873 (S.D. Tex. Dec. 9, 2019). "Some day" intentions, without any description of concrete plans do not support a finding of the "actual or imminent" injury Article III requires. *Lujan*, 504 U.S. at 561. His cookie-cutter, boilerplate complaint does not allege any plausible reason (other than his search for lawsuits) for Mr. Castillo to visit the Property in the first place. Other than merely mentioning to "dine at a restaurant," he fails to accurately identify any public accommodation at the property. It is not surprising he also fails to plausibly plead an intent to return that would give rise to an imminent threat of future harm. He claims he intends to revisit the Property "within six months of the filing of this Complaint or sooner" or "in the very near future," but does not allege why he expects to return except "as a patron" – a meaningless conclusion, especially for someone who previously claimed to be a

tester looking for lawsuits. Plaintiff's Original Complaint at ¶¶ 13 and 22; Plaintiff's First Amended Complaint at ¶ 15.

Mr. Castillo's original complaint went so far as to suggest the Court should tell him when to return, pledging to "do whatever is necessary to create the requisite standing to confer jurisdiction upon this Court," "including returning to the Subject Property. Plaintiff's Original Complaint at ¶ 7. Despite Defendant's prior motion to dismiss, Plaintiff continues to fail to demonstrate any "concrete plans." This is to be expected as Mr. Castillo cannot accurately identify any public accommodation at the Property. Mr. Castillo has only "someday intentions" that are not sufficient to plead an imminent future injury. *Strojnik v. Teof Hotel GP*, No. 3:19-CV-01336-E, 2020 WL 5211063, 2020 U.S. Dist. LEXIS 158287 (N.D. Tex. Aug. 31, 2020); *Access 4 All, Inc. v. Boardwalk Regency Corp.*, No. 08-3817, 2010 U.S. Dist. LEXIS 124625, 2010 WL 4860565 (D.N.J. Nov. 23, 2010) ("An ADA plaintiff who seeks an injunction mandating removal of architectural barriers cannot 'manufacture standing' by simply claiming that he intends to return to the defendant's establishment.").

Finally, the lack of standing is obvious once the 60 plus lawsuits filed by Plaintiff's counsel, and attorneys Matthew Sapp and K. Michael Sturgill. These virtually identical lawsuits in the Western District of Texas against different small business defendants utilizing the same cast of plaintiffs, reek of entrepreneurial litigation. None of these cases demonstrate a particularized, actual, or imminent injury. The outrageous pre suit demands for money and legalistic boilerplate

complaints seek to avoid any issues regarding standing, but the obvious repetition of alleged *Americans with Disabilities Act Accessibility Guidelines* defects without any particularity belie any plausible assertions of Article III jurisdiction.


VI.    MR. CASTILLO HAS NOT ALLEGED THAT THE REMOVABLE OF THE ALLEGED BARRIERS IS READILY ACHIEVABLE

Mr. Castillo's only allegations about the cost and difficulty of removing the alleged barriers to access merely paraphrase the statute or are too vague to satisfy the FEDERAL RULES OF CIVIL PROCEDURE. Mr. Castillo alleges:

> The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense.

Plaintiff's First Amended Complaint at ¶ 36. This merely paraphrases the language of the statute:

> The term "readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense.

42 U.S.C. §12181(9). Once again, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements' of a cause of action will not do." *Ashcroft*, 556 U.S. at 678. Likewise, the boilerplate description of why removal of the barriers to access can be readily achieved adds no useful detail:

> Removal of the physical barriers and dangerous conditions present at the Subject Property is readily achievable because of the site conditions at the Subject Property, the structural design of the subject facility, and the straightforward nature of the necessary modifications.

Plaintiff's First Amended Complaint at ¶ 38. "Site conditions," "structural design" and "straightforward nature" are all left unexplained, and any further explanation might necessitate that Plaintiff's counsel do something more than file another cookie-cutter complaint.

The Ninth Circuit recently articulated a plaintiff's burden in pleading that removal of architectural barriers is readily achievable:

> Accordingly, we hold that to satisfy their initial burden, ADA plaintiffs must plausibly show how the cost of removing the architectural barrier at issue does not exceed the benefits under the circumstances.

*Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020). An earlier case from Texas illustrates why allegations like those in the Complaint are not adequate. *Persyn v. Torres*, No. SA-11-CV-0141 FB, 2011 WL 1549203, 2011 U.S. Dist. LEXIS 43828 (W.D. Tex. Apr. 22, 2011).

In *Persyn* the plaintiff alleged that a concrete step was a barrier to access and that an aluminum ramp would eliminate it. The Court found the pleading was inadequate because "it does not state how a portable ramp would achieve ADA compliance without much difficulty or expense." *Id*.

The Complaint in *Persyn* at least described a method for removing an architectural barrier; Mr. Castillo's Complaint does not go even that far. He does not suggest how any of the alleged access barriers might be removed, why this is made readily achievable by the site conditions and structural design or why the cost would be reasonable in terms of the benefit. In the absence of specific allegations concerning

why removal of the alleged barriers to access is readily achievable the Complaint fails to state a claim on which relief may be granted.[5]

## VII.   CONCLUSION

*Laufer's* holding that "deprivation of a right created by statute must be accompanied by 'some concrete interest that is affected by the deprivation'" has been confirmed by Supreme Court in *TransUnion*. Article III standing requires more than the fact the statute has been violated and Congress has granted a cause of action. The Supreme Court held that "the public interest that private entities comply with the law" cannot "be converted into an individual right by a statute that denominates it as such, and that permits all citizens (or, for that matter, a subclass of citizens who suffer no distinctive concrete harm) to sue." 594 U.S. at ___, 141 S.Ct. at 2206.

Mr. Castillo has not plausibly alleged that he has suffered the "distinctive concrete harm," required by *TransUnion* and *Laufer*. He has not plausibly alleged an imminent future injury that would give him standing to seek injunctive relief and he has not plausibly alleged that the required remediation is readily achievable. Thus, he

---

[5] This question has been extensively considered in District Courts in Florida and California. There is some contrary authority in Florida, but more recent cases all seem to hold that a conclusory allegation that barrier removal is readily achievable is not sufficient to state a claim. See *Kennedy v. U and V Food Corp.*, No: 2:17-cv-696-FtM-38MRM, 2019 WL 343201, 2019 U.S. Dist. LEXIS 13906 (M.D. Fla. Jan. 10, 2019), report and recommendation adopted, 2019 WL 338914, 2019 U.S. Dist. LEXIS 13039 (M.D. Fla. Jan. 28, 2019) and *McNeil v. Chereddy*, No. 6:20-cv-1767-WWB-GJK, 2021 WL 2955860, 2021 U.S. Dist. LEXIS 69698 (M.D. Fla. Apr. 8, 2021). The same is true in California; see, *Kee Sook Ahn v. Dale Harris, as Tr. of the Dale and Lynne Harris 2001 Revocable Tr. Dated October 8, 2001 et al.*, No. 2:21-CV-04310-SB-SP, 2021 WL 6102507 (C.D. Cal. Nov. 24, 2021).

has failed to plead either subject matter jurisdiction or a claim for which relief may be granted and his Complaint should be dismissed under RULE 12(b)(1) and 12(b)(6).

WHEREFORE, PREMISES, ARGUMENTS, and AUTHORITIES CONSIDERED, Defendant prays that Plaintiff's claims against Defendant for violation of the AMERICANS WITH DISABILITIES ACT be dismissed, and that costs and attorneys' fees be assessed against the Plaintiff.

DATED: November 17, 2022

Respectfully submitted,

Geoffrey N. Courtney
ATTORNEY AT LAW
111 Soledad St., Suite 540
San Antonio, Texas   78205-1531
(210) 227-7121 - Telephone
(210) 227.0732 - Facsimile
GNCourtney@GNCourtney.com

GEOFFREY N. COURTNEY

James C. Harrington
Texas Bar No. 09048500
5304 Halmark Drive
Austin, TX 78723
(512) 771-1759 - Telephone
jim.harrington.austin@gmail.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of November 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Duncan Strickland
Counsel for Plaintiff
State Bar No.: 24072374
13423 Blanco Road, #936
San Antonio, TX 78216
Telephone: (210) 504-7874
Facsimile: (832) 218-4317
E-mail: Duncan@StricklandLawFirm.com

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

NONE.

 /s/ Geoffrey N. Courtney
GEOFFREY N. COURTNEY

Exhibit A

# STRICKLAND
## Law Firm, PLLC

13423 BLANCO ROAD
SAN ANTONIO, TX 78216
PHONE: (210) 504-7874
FAX:  (832) 218-4317

CONFIDENTIAL COMMUNICATION REGARDING OFFER TO COMPROMISE UNDER FED. R. EVID. 408

June 7, 2022

CHO OK SANG
2543 Blossom Drive
SAN ANTONIO, TX 78217

RE:    Settlement Demand – JOSEPH CASTILLO v. CHO OK SANG
Sent: By UPS Ground #

Dear Sir or Madam:

I have been retained as local counsel concerning a complaint against your place of business located at 2515 Nacodoches Rd, San Antonio, TX 78217. My client, **JOSEPH CASTILLO**, an individual with disabilities as defined by the Americans with Disabilities Act (ADA), attempted to but was deterred from patronizing your business on or about April of 2022. Enclosed please find a Complaint that I have prepared alleging that **CHO OK SANG** is in violation of the Americans with Disabilities Act (ADA).

My client is willing to settle this case without filing the Complaint. My client will settle this matter by releasing **CHO OK SANG** of all known or unknown ADA claims at the subject location which have been or could have been raised as of the date a Settlement Agreement is executed provided that you agree to bring the property into compliance with the ADA and delivers payment to my firm in the amount of $15,500.00 to settle any and all present and future claims that have or could have been made as of the date of the Agreement. $15,500.00 represents the minimum value to settle this case.

A Settlement Agreement would propose a deadline for receipt of payment and exchange of executed agreements to occur on or before June 17, 2022. My client is willing for the repair completion period for the subject facility to be 90 days from the date of execution of the Agreement. Based on these terms, you may have the opportunity to take advantage of the tax deduction (up to $15,000) and tax credit (up to $5,000) for access related expenditures. These incentives may be available each fiscal year that you make disability access related expenditures.
I agree not to withdraw this offer to settle for 10 days. I look forward to hearing back from you.

**NOTE: Any tax or accounting information herein is for informational purposes only and is not intended to provide, and should not be relied on for, tax and/or accounting advice. You should consult your own tax and/or accounting advisors.**

Sincerely,

Duncan Strickland
Duncan@StricklandLawFirm.com
Strickland Law Firm, PLLC

Enclosure

<span style="color:red">**Exhibit A**</span>

# STRICKLAND
## Law Firm, PLLC

13423 BLANCO ROAD
SAN ANTONIO, TX 78216
PHONE: (210) 504-7874
FAX:    (832) 218-4317

CONFIDENTIAL COMMUNICATION REGARDING OFFER TO COMPROMISE UNDER FED. R. EVID. 408

June 7, 2022

BANDERA BLISS LLC
C/O JOE M. KBOUDI R.E., INC.
7300 BLANCO ROAD, STE. 706.
SAN ANTONIO, TX 78216

RE:    Settlement Demand – JOSEPH CASTILLO v. BANDERA BLISS LLC
Sent: By UPS Ground #

Dear Sir or Madam:

I have been retained as local counsel concerning a complaint against your place of business located at 5720 Bandera Rd, San Antonio, TX 78238. My client, **JOSEPH CASTILLO**, an individual with disabilities as defined by the Americans with Disabilities Act (ADA), attempted to but was deterred from patronizing your business on or about March of 2022. Enclosed please find a Complaint that I have prepared alleging that **BANDERA BLISS LLC** is in violation of the Americans with Disabilities Act (ADA).

My client is willing to settle this case without filing the Complaint. My client will settle this matter by releasing **BANDERA BLISS LLC** of all known or unknown ADA claims at the subject location which have been or could have been raised as of the date a Settlement Agreement is executed provided that you agree to bring the property into compliance with the ADA and delivers payment to my firm in the amount of $15,500.00 to settle any and all present and future claims that have or could have been made as of the date of the Agreement. $15,500.00 represents the minimum value to settle this case.

A Settlement Agreement would propose a deadline for receipt of payment and exchange of executed agreements to occur on or before June 17, 2022. My client is willing for the repair completion period for the subject facility to be 90 days from the date of execution of the Agreement. Based on these terms, you may have the opportunity to take advantage of the tax deduction (up to $15,000) and tax credit (up to $5,000) for access related expenditures. These incentives may be available each fiscal year that you make disability access related expenditures.
I agree not to withdraw this offer to settle for 10 days. I look forward to hearing back from you.

**NOTE: Any tax or accounting information herein is for informational purposes only and is not intended to provide, and should not be relied on for, tax and/or accounting advice. You should consult your own tax and/or accounting advisors.**

Sincerely,

Duncan Strickland
Duncan@StricklandLawFirm.com
Strickland Law Firm, PLLC

Enclosure



**STRICKLAND**
**Law Firm, PLLC**

13423 BLANCO ROAD
SAN ANTONIO, TX 78216
PHONE: (210) 504-7874
FAX:   (832) 218-4317

CONFIDENTIAL COMMUNICATION REGARDING OFFER TO COMPROMISE UNDER FED. R. EVID. 408

April 4, 2022

OASIS VENTURES LLC
C/O Abbas Bandali
13532 Oregon Flat Trl
Austin, TX 78727

RE:   Settlement Demand – RYAN LAMBERT v. OASIS VENTURES LLC
Sent: By Fedex Ground #

Dear Sir or Madam:

I have been retained as local counsel concerning a complaint against your place of business located at 3501 Bellmead Dr, Waco, TX 76705. My client, Ryan Lambert, an individual with disabilities as defined by the Americans with Disabilities Act (ADA), attempted to but was deterred from patronizing your business on or about February of 2022. Enclosed please find a Complaint that I have prepared alleging that OASIS VENTURES LLC is in violation of the Americans with Disabilities Act (ADA).

My client is willing to settle this case without filing the Complaint. My client will settle this matter by releasing OASIS VENTURES LLC of all known or unknown ADA claims at the subject location which have been or could have been raised as of the date a Settlement Agreement is executed provided that you agree to bring the property into compliance with the ADA and delivers payment to my firm in the amount of $15,500.00 to settle any and all present and future claims that have or could have been made as of the date of the Agreement. $15,500.00 represents the minimum value to settle this case.

A Settlement Agreement would propose a deadline for receipt of payment and exchange of executed agreements to occur on or before April 14, 2022. My client is willing for the repair completion period for the subject facility to be 90 days from the date of execution of the Agreement. Based on these terms, you may have the opportunity to take advantage of the tax deduction (up to $15,000) and tax credit (up to $5,000) for access related expenditures. These incentives may be available each fiscal year that you make disability access related expenditures.
I agree not to withdraw this offer to settle for 10 business days. I look forward to hearing back from you.

**NOTE: Any tax or accounting information herein is for informational purposes only and is not intended to provide, and should not be relied on for, tax and/or accounting advice. You should consult your own tax and/or accounting advisors.**

Sincerely,

Duncan Strickland
Email: Duncan@StricklandLawFirm.com
Strickland Law Firm, PLLC

Enclosure